UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re JEFFREY ST. CLAIR and CATHLEEN
ST. CLAIR,

                                  Debtors.
----------------------------------------------------------------X
CADLES OF GRASSY MEADOWS II, L.L.C.,

                                  Plaintiff,

            -against-

JEFFREY ST. CLAIR and CATHLEEN
ST. CLAIR,

                                Defendants.
----------------------------------------------------------------X

**ORDER**
**13-mc-1057(SJF)**

FEUERSTEIN, J.,

On November 21, 2013, Cadles of Grassy Meadows II, L.L.C. ("Cadles") filed in the United States Bankruptcy Court for the Eastern District of New York ("the bankruptcy court") a motion for leave to appeal to this Court from an order of the bankruptcy court (Grossman, U.S.B.J.), dated November 15, 2013, denying its motion for summary judgment in an adversary proceeding pursuant to 11 U.S.C. § 727, which was transmitted to this Court on December 6, 2013.

I.     Factual Background

On or about May 11, 2012, the debtors, Jeffrey St. Clair and Cathleen St. Clair (collectively, "the debtors"), commenced an action in the bankruptcy court, entitled <u>In re Jeffrey St. Clair and Cathleen St. Clair</u>, No. 12-73024, by filing a voluntary petition for bankruptcy relief

1

under Chapter 7, Title 11 of the United States Code. (Affirmation of Steven Giordano in Support of Motion by [Appellant] for an Order Granting Leave to Appeal ["Giordano Aff."], ¶ 15). Cadles is a creditor of the debtors pursuant to a judgment in the amount of one hundred forty-eight thousand five hundred fifty-nine dollars and fifty-five cents ($148,559.55). (Giordano Aff., ¶ 16).

By order dated June 26, 2012 ("the Discovery Order"), the bankruptcy court directed the debtors to appear for examination and produce documents pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("the Bankruptcy Rules") "at a time specified by [Cadles's] attorney upon twenty days' notice to Debtors and Debtors' counsel by service of a copy of the Order and a subpoena by certified mail." (Giordano Aff., ¶ 17).

On or about September 11, 2012, Cadles filed a motion to dismiss the bankruptcy action pursuant to 11 U.S.C. § 707 and for sanctions, or, in the alternative, for a conditional order of dismissal, based upon, *inter alia*, the debtors' alleged failure to comply with the Discovery Order and subpoenas issued in accordance therewith. (Giordano Aff., ¶ 19).

During an appearance on January 30, 2013, the bankruptcy court, *inter alia*, directed the debtors "to fully comply with the Subpoenas by producing all of their documents in their possession, custody and control and providing a sworn Response, as well as appearing for their depositions within three (3) weeks." (Giordano Aff., ¶ 22).

During an appearance on the record on February 27, 2013, *inter alia*: (1) the debtors "repeatedly informed the Court that they did not have in their possession, custody and/or control any additional documents, despite their objections to producing certain documents," (Giordano Aff., ¶ 23); and (2) the bankruptcy court (a) directed the debtors to file affidavits attesting that

they had no additional documents in their possession responsive to the Discovery Order and subpoenas and (b) ordered that the debtors appear for their depositions on March 13 and 14, 2013. (Giordano Aff., ¶ 23). On March 12, 2013, the debtors filed an affidavit with the bankruptcy court attesting that "[t]he Documents [they] have submitted to Counsel for Cadles are the only requested documents in [their] possession and control." (Giordano Aff., ¶ 24).

According to Cadles, during the deposition of Jeffrey St. Clair on March 13, 2013, "it became abundantly clear * * * that not only did [he] have a plethora of required documents in his possession, custody and/or control, which he failed to produce, but he outright refused to produce documents and objected to their production * * *." (Giordano Aff., ¶ 25). Cadles alleges that Cathleen St. Clair also admitted during her deposition on March 14, 2013 that "she had in her possession, custody and/or control additional documents * * *." (Giordano Aff., ¶ 31).

By order dated May 20, 2013 ("the Sanctions Order"), the bankruptcy court found that Cadles had demonstrated that the debtors had (i) failed to comply with (a) the Discovery Order, (b) the subpoenas issued in accordance with the Discovery Order and (c) four (4) orders issued from the bench on November 7, 2012, January 30, 2013, February 27, 2013 and April 3, 2013; (ii) "made false and fraudulent representations to the [bankruptcy court] on the record and by the filing of an affidavit, sworn to on March 3, 2013, that they had no further documents in their possession and/or control other than what was previously turned over to Cadles' counsel; and (iii) withheld books, documents, records and papers relating to debtors' financial affairs * * *." Sanction Order at 1. The bankruptcy court granted the branch of Cadles's motion seeking sanctions against the debtors and ordered the debtors to pay the amount of seven thousand five hundred dollars ($7,500.00) to Cadles, with said sum "deemed non-dischargeable in th[e]

3

bankruptcy proceeding." Sanctions Order at 2.

On or about April 5, 2013, Cadles commenced an adversary proceeding against the debtors in the bankruptcy court, entitled <u>Cadles of Grassy Meadows II, L.L.C. v. Jeffrey St. Clair, et ano.</u>, Adv. Pro. No. 8-13-08044-reg, seeking the denial of the debtors' discharge under 11 U.S.C. § 727. (Giordano Aff., ¶ 33).

On or about August 8, 2013, Cadles filed a motion for summary judgment in the adversary proceeding, seeking the denial of the debtors' discharge pursuant to 11 U.S.C. §§ 727(a)(4)(A), (a)(4)(B), (a)(4)(D), (a)(6)(A), (a)(3) and (a)(2). (Bankruptcy Docket ["Bankr. Doc."] No. 8). On or about September 6, 2013, Narissa A. Joseph, Esq. filed an affirmation in opposition to Cadles's motion for summary judgment on behalf of the debtors. (Bankr. Doc. No. 12). On or about that same date, Karamvir Dahiya, Esq. filed, or attempted to file, a notice of appearance on behalf of the debtors. (Bankr. Doc. No. 14).

On or about September 8, 2013, prior to being substituted as counsel for the debtors, Mr. Dahiya filed an "Emergency Memorandum of Law in Opposition" to Cadles's motion for summary judgment. (Bankr. Doc. No. 15). According to Cadles, "Mr. Dahiya claimed that [the debtors] allegedly lacked the intent in their violative conduct * * *." (Giordano Aff., ¶ 40). Cadles filed a reply to Mr. Dahiya's opposition on or about October 4, 2013. (Bankr. Doc. No. 20).

According to Cadles, during a court appearance on September 9, 2013, the return date of Cadles's summary judgment motion, the bankruptcy court: (1) "adjourned the matter so that a proper substitution of counsel could be done by [the debtors], even though the Court previously set forth, due to the labeled 'gross negligent' [sic] conduct by Narissa Joseph, Esq., in advancing

the false and fraudulent statements by [the debtors], that she would not be relieved[,]" (Giordano Aff., ¶ 41); and (2) indicated that it would consider Mr. Dahiya's opposition and that Cadles should file a response to it. Id.

Mr. Dahiya subsequently moved to be substituted as counsel for the debtors, (Bankr. Doc. No. 16), which was granted by the bankruptcy court on November 4, 2013. (Bankr. Doc. No. 26).

By order dated November 15, 2013 ("the Summary Judgment Order"), the bankruptcy court denied Cadles's motion for summary judgment in the adversary proceeding based upon the papers submitted in support of, and in opposition to, the motion and "the entire record in th[e] case, including the record of the May 13, 2013 hearing at which th[e] [bankruptcy court] indicated that the allegations of the section 727 adversary proceeding would be considered separate and apart from the imposition of sanctions against the Debtors * * *." (Summary Judgment Order at 1). The bankruptcy court found: (1) "that it would be fundamentally unfair to give collateral estoppel effect, in this section 727 proceeding, to [its] [Sanctions] Order * * *," (Summary Judgment Order at 2); and (2) "that there exist genuine disputes as to material facts in th[e] adversary proceeding," id.

On or about November 21, 2013, Cadles filed in the bankruptcy court a motion seeking leave to appeal to this Court from the Summary Judgment Order, (Bankr. Doc. No. 28), which was transmitted to this Court on or about December 6, 2013, (Bankr. Doc. No. 33).

II. Discussion

A. Standard

"Bankruptcy court rulings are appealable to the district courts pursuant to 28 U.S.C. § 158(a), which gives the district court jurisdiction to review both final determinations, and, with leave, interlocutory orders of the bankruptcy court." First Fidelity Bank, N.A., New Jersey v. Hooker Investments, Inc. (In re Hooker Investments, Inc.), 937 F.2d 833, 836 (2d Cir. 1991); see also In re Perry H. Koplik & Sons, Inc., 377 B.R. 69, 73 (S.D.N.Y. 2007) ("Pursuant to Section 158(a)(3), 'with leave of the court,' district courts have jurisdiction to hear appeals from 'interlocutory orders and decrees' of the bankruptcy courts." (quoting 28 U.S.C. § 158(a)(3))).[1] The parties do not dispute that the Summary Judgment Order is an interlocutory order requiring leave to appeal to this Court.

"To determine whether leave to appeal should be granted, district courts apply the standards prescribed in 28 U.S.C. § 1292(b) ('Section 1292(b)')." In re Perry H. Koplik & Sons, Inc., 377 B.R. at 73; see also In re Futter Lumber Corp., 473 B.R. 20, 26 (E.D.N.Y. 2012) (accord); In re Calpine Corp., 356 B.R. 585, 592-93 (S.D.N.Y. 2007) ("While neither the Bankruptcy Code nor the Federal Rules of Bankruptcy provide standards for evaluating a motion

---

[1] Section 158(a) of Title 28 of the United States Code provides, in relevant part:

"The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees; (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and (3) with leave of the court, from other interlocutory orders and decrees; and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. * * *"

for leave to appeal, the majority of courts have applied the analogous standard for certifying an interlocutory appeal set forth in 28 U.S.C. § 1292(b)." (quotations and citations omitted)).[2] "Under Section 1292(b), the district court, in its discretion, may permit an appeal of an interlocutory order from the bankruptcy court if (1) 'such order involves a controlling question of law,' (2) 'as to which there is substantial ground for difference of opinion,' and (3) 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" In re Perry H. Koplik & Sons, Inc., 377 B.R. at 74 (quoting 28 U.S.C. § 1292(b)); see also In re Futter Lumber Corp., 473 B.R. at 26; Picard v. Estate of Madoff, 464 B.R. 578, 582 (S.D.N.Y. 2011). "[A]ll three requirements set forth in [S]ection 1292(b) must be met for a Court to grant leave to appeal." In re Futter Lumber Corp., 473 B,R, at 26-27; see also In re South African Apartheid Litigation, 624 F. Supp. 2d 336, 339 (S.D.N.Y. 2009). Since interlocutory appeals are "disfavored," In re Perry H. Koplik & Sons, Inc., 377 B.R. at 74; see also U.S. Securities and Exchange Commission v. Citigroup Global Markets Inc., 827 F. Supp. 2d 336, 337 (S.D.N.Y. 2011) (holding that interlocutory appeals "are strongly disfavored in the federal system."), "[t]he party seeking an interlocutory appeal has the burden of showing 'exceptional circumstances' * * *." In re Perry H. Koplik & Sons, Inc., 377 B.R. at 74 (quoting

---

[2] Section 1292(b) of Title 28 of the United States Code provides, in relevant part:

> "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order * * *."

7

Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria, 921 F.2d 21, 24 (2d Cir. 1990)); see also In re Futter Lumber Corp., 473 B.R. at 34 ("Courts should construe the requirements for certification [under Section 1292(b)] strictly and only exceptional circumstances will justify certification." (quotations and citation omitted)); In re Calpine Corp., 356 B.R. at 593 ("Under section 1292(b), only exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." (quotations, citations and brackets omitted)). Section 1292(b) should not be liberally construed, "since the power to grant an interlocutory appeal must be strictly limited to the precise conditions stated in the law." Klinghoffer, 921 F.2d at 24-25 (quotations, brackets and citation omitted); see also In re Enron Creditors Recovery Corp., 410 B.R. 374, 379 (S.D.N.Y. 2008) (accord).

"Although the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' * * * it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." Klinghoffer, 921 F.2d at 24; see also Picard, 464 B.R. at 582 (holding that a "controlling question of law" is one "in which reversal of the bankruptcy court's order would (1) terminate the action or (2) materially affect the outcome of the litigation."); MCI WorldCom Communications v. Communications Network International, Ltd., 358 B.R. 76, 79 (S.D.N.Y. 2006) (accord). "Additionally, the question of law must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." In re Perry H. Koplik & Sons, Inc., 377 B.R. at 74 (quotations and citation omitted); see also In re Futter Lumber Corp., 473 B.R. at 27; Picard, 464 B.R. at 582; In re Fairfield Sentry Ltd. Litigation, 458 B.R. 665, 673 (S.D.N.Y. 2011). Mixed questions of law and

8

fact are "not generally suitable for interlocutory appeal." MCI WorldCom, 358 B.R. at 79; see also In re Ambac Financial Group, Inc. Securities Litigation, 693 F. Supp. 2d 241, 285 (S.D.N.Y. 2010); Century Pacific, Inc. v. Hilton Hotels Corp., 574 F. Supp. 2d 369, 371-72 (S.D.N.Y. 2008), aff'd on other grounds, 354 Fed. Appx. 496 (2d Cir. Nov. 25, 2009); Morris v. Flaig, 511 F. Supp. 2d 282, 315 (E.D.N.Y. 2007). "Moreover, [q]uestions regarding application of the appropriate law to the relevant facts are generally not suitable for certification under Section 1292(b)." In re Perry H. Koplik & Sons, Inc., 377 B.R. at 74 (alteration in original; quotations and citation omitted); see, e.g. In re Futter Lumber, 473 B.R. at 33-34; Century Pacific, 574 F. Supp. 2d at 371-72.

"[F]or there to be 'substantial grounds for difference of opinion,' the issue must involve more than strong disagreement between the parties." In re Perry H. Koplik & Sons, Inc., 377 B.R. at 74 (quotations and citation omitted); see also In re Alexander, 248 B.R. 478, 483 (S.D.N.Y. 2000); North Fork Bank v. Abelson, 207 B.R. 382, 390 (E.D.N.Y. 1997). "[W]hether there is substantial ground for a difference of opinion as to the question of law[] requires a genuine doubt as to whether the bankruptcy court applied the correct legal standard." MCI WorldCom, 358 B.R. at 79; see also Picard, 464 B.R. at 582; In re Fairfield Sentry Ltd. Litigation, 458 B.R. at 673. The second prong of Section 1292(b) "will be satisfied if the issue is difficult and of first impression * * * or if there is conflicting authority on the issue." In re Perry H. Koplik & Sons, Inc., 377 B.R. at 74 (quotations and citations omitted); see also In re Futter Lumber Corp., 473 B.R. at 29; Picard, 464 B.R. at 582. "[A] bare claim that a bankruptcy court's ruling was incorrect is not sufficient to satisfy the [Section 1292(b)] standard." In re Perry H. Koplik & Sons, Inc., 377 B.R. at 74; see also In re Futter Lumber Corp., 473 B.R. at 29; Thomas v. iStar

9

Financial Inc., 520 F. Supp. 2d 478, 482 (S.D.N.Y. 2007).

"[A]n immediate appeal is considered to advance the ultimate termination of the litigation if that 'appeal promises to advance the time for trial or to shorten the time required for trial.'" In re Perry H. Koplik & Sons, Inc., 377 B.R. at 74 (quoting Transport Workers Union of Am., Local 100, AFL-CIO v. N.Y.C. Transit Auth., 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005)); see also Mills v. Everest Reinsurance Co., 771 F. Supp. 2d 270, 274 (S.D.N.Y. 2009).

### B. Motion for Leave to Appeal

Cadles contends, *inter alia*, that the bankruptcy court "incorrectly found" (1) that there were questions of fact precluding summary judgment in its favor in the adversary proceeding; and (2) that it would be "fundamentally unfair" to grant summary judgment in its favor based upon the bankruptcy court's findings in the Sanctions Order. (Affirmation of Steven Giordano in Support of Motion by [Appellant] for an Order Granting Leave to Appeal ["Giordano Aff."], ¶ 10). Specifically, Cadles contends that the bankruptcy court's findings in the Sanctions Order, *inter alia*, that the debtors failed to comply with multiple orders of the bankruptcy court, made false and fraudulent representations to the Court and withheld books, documents, records and papers relating to their financial affairs, are law of the case and require granting a denial of discharge under Section 727 as a matter of law. Cadles seeks leave to appeal the Summary Judgment Order to this Court "so that [this Court] can rectify the erroneous and prejudicial denial of summary judgment by the Bankruptcy Court." (Giordano Aff., ¶ 14). According to Cadles, leave to appeal should be granted because: (1) "the Bankruptcy Court has shown a lack of rational or reasonable basis for its decision, the Bankruptcy Court acted arbitrarily or capricious

[sic], or there has been an abuse of discretion,"³ id.; and (2) "as a creditor in the estate, [it] will be prejudiced by having to continue to litigate and go to trial on a matter in which the issues have already been judicially determined * * *." Id.

Cadles has not advanced any controlling question of law for which substantial ground for difference of opinion exists, nor has it demonstrated that the appeal implicates "exceptional circumstances." The appeal does not present a "pure question of law" that this Court can decide "quickly and cleanly without having to study the record." In re Perry H. Koplik & Sons, Inc., 377 B.R. at 74; e.g. Chappell & Co. v. Frankel, 367 F.2d 197, 200 n. 4 (2d Cir. 1966) ("It is doubtful whether the denial of summary judgment when the applicable law is clear but there is a genuine issue as to a material fact can properly be certified under Section 1292(b), for that section is limited only to certifying an order involving a 'controlling question of law.'"); In re Parikh, No. 09-mc-0227, 2009 WL 2383032, at * 3 (E.D.N.Y. July 30, 2009) ("A Bankruptcy Court's holding that there exists disputed issues of material fact does not present a 'pure question of law' that this Court can 'decide quickly without having to study the record,' as is required for an interlocutory appeal."); McKenzie-Gilyard v. HSBC Bank Nevada, N.A., No. 08-cv-160, 2008 WL 2622931, at * 3 (E.D.N.Y. July 1, 2008) (finding that in denying the appellant's motion for summary judgment on the basis, *inter alia*, that genuine issues of fact existed, "the Bankruptcy

---

³ Cadles cites to one (1) district court case from the Eastern District of Louisiana, In re Executive Office Centers, Inc., 75 B.R. 60 (E.D. La. 1987), that applied a "lack of rational or reasonable basis," "arbitrary or capricious" or "abuse of discretion" standard, as opposed to the standard prescribed by Section 1292(b), to a motion seeking leave to appeal to the district court from an interlocutory order of the bankruptcy court. This Court did not find even one (1) case in this Circuit which applied that standard and holds, in line with the majority of courts in this Circuit and elsewhere, that the appropriate standard to be applied to motions seeking leave to appeal to a district court from an interlocutory order of a bankruptcy court is that set forth in Section 1292(b), as set forth above.

11

Court did not specifically rule upon any legal issues to which there could potentially be a 'substantial ground for difference of opinion,' * * *" and that, "[a]s a result, there [were] no 'pure questions of law' that th[e] Court [could] "decide quickly and cleanly without having to study the record.") "Section 1292(b) does not contemplate immediate appeal solely on the ground that such an appeal may advance the proceedings in the district [or bankruptcy] court where the district [or bankruptcy] court denied summary judgment on the basis of a disputed issue of fact." Mills, 771 F. Supp. 2d at 275-76; see also Harriscom Svenska AB v. Harris Corp., 947 F.2d 627, 631 (2d Cir. 1991) ("Where * * * the controlling issues are questions of fact, or, more precisely, questions as to whether genuine issues of material fact remain to be tried, the federal scheme does not provide for an immediate appeal solely on the ground that such an appeal may advance the proceedings in the district court.")

Furthermore, Cadles's contention that the findings in the Sanctions Order constitute the law of the case and require a denial of discharge as a matter of law does not warrant an interlocutory appeal, particularly since "[q]uestions regarding application of the appropriate law to the relevant facts are generally not suitable for certification under Section 1292(b)." In re Perry H. Koplik & Sons, Inc., 377 B.R. at 74 (alteration in original; quotations and citation omitted); see also In re Committee of Asbestos-Related Litigants, 749 F.2d 3, 5 (2d Cir. 1984) ("[I]nterlocutory appeals of essentially factual questions are especially disfavored * * *.") In any event, even assuming, *arguendo*, that the bankruptcy court's findings in the Sanctions Order constitute law of the case, Cadles's contention that it is entitled to summary judgment in the adversary proceeding based upon those findings is without merit.

Section 727 of Title 11 of the United States Code ("Section 727") provides, in relevant part:

12

> "(a) The court shall grant the debtor a discharge, unless– * * * (2) the debtor, with intent to hinder, delay, or defraud a creditor * * * has * * * concealed, or has permitted to be * * * concealed– (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition; (3) the debtor has concealed * * *any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case; (4) the debtor knowingly and fraudulently, in or in connection with the case– (A) made a false oath or account; (B) presented or used a false claim; * * * or (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs; [or] (6) the debtor has refused, in the case– (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify * * *."

11 U.S.C. § 727(a).[4] Since Section 727 "impos[es] an extreme penalty for wrongdoing, [it] must be construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt." D.A.N. Joint Venture v. Cacioli (In re Cacioli), 463 F.3d 229, 234 (2d Cir. 2006) (quotations and citation omitted); see also In re Kran, 493 B.R. 398, 403 (S.D.N.Y. 2013) (accord). "The objecting creditor bears the burden to establish the requirements of Section 727 by a preponderance of the evidence." In re Virovlyanskiy, 485 B.R. 268, 272 (Bankr. E.D.N.Y. 2013); In re Moreo, 437 B.R. 40, 59 (E.D.N.Y. 2010); In re Murray, 249 B.R. 223, 228 (E.D.N.Y. 2000).

1. Finding that the Debtors Made False and Fraudulent Representations

In the Sanctions Order, the bankruptcy court found that the debtors "made false and fraudulent representations to the Court on the record and by the filing of an affidavit * * * that

---

[4] Although Cadles moved for summary judgment under all of the above provisions, it does not advance any claim under Sections 727(a)(2) or (3) in its application seeking leave to appeal to this Court from the Summary Judgment Order of the bankruptcy court.

13

they had no further documents in their possession and/or control other than what was previously turned over to Cadles' counsel[.]" Sanctions Order at 1. Cadles contends that this finding requires a denial of discharge under both Section 727(a)(4)(A) and Section 727(a)(4)(B) as a matter of law.

"[T]o prove an objection to discharge under Section 727(a)(4)(A) [i.e., that the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account], the party objecting to discharge must establish by a preponderance of the evidence that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with intent to deceive; and (5) the statement related materially to the bankruptcy case." In re Moreo, 437 B.R. at 59 (quotations and citation omitted); see also Republic Credit Corp. 1 v. Boyer (In re Boyer), 328 Fed. Appx. 711, 715 (2d Cir. June 11, 2009) (summary order). "In order to deny a debtor's discharge under 11 U.S.C. § 727(a)(4)(B), the debtor must have presented or used, with intent to defraud, inflated or fictitious claims in a bankruptcy case." In re Natale, 136 B.R. 344, 349 (Bankr. E.D.N.Y. 1992); see also Dranichak v. Rosetti, 493 B.R. 370, 378 (N.D.N.Y. 2013); In re Gollomp, 198 B.R. 433, 439 (S.D.N.Y. 1996). "In either case, whether it be a false statement under oath or use of a false claim, the wilful intent to defraud is a crucial element of the cause of action." In re Natale, 136 B.R. at 349.

Even assuming, *arguendo*, that the bankruptcy court's finding in the Sanctions Order that the debtors "made false and fraudulent representations" satisfies Cadles's burden under Section 727(a)(4), the burden of production then shifts to the debtors to produce a "credible explanation" for making the "false and fraudulent representations." In re Moreo, 437 B.R. at 59; see also In re

14

Adler, 395 B.R. 827, 841 (E.D.N.Y. 2008); In re Murray, 249 B.R. at 228; In re Gollomp, 198 B.R. at 437. This is a question of fact left unresolved by the Sanctions Order. Thus, even assuming, *arguendo*, that the bankruptcy court's finding in the Sanctions Order that the debtors "made false and fraudulent representations to the Court" constitutes the law of the case and satisfies Cadles's initial burden of production, any appeal from the Summary Judgment Order would nonetheless require an assiduous review of the entire record to resolve a factual issue left unresolved by the Sanctions Order, which is not appropriate on an interlocutory appeal.[5]

2. Finding that the Debtors Failed to Comply with Court Orders

In the Sanctions Order, the bankruptcy court also found that the debtors "*failed* to comply," *inter alia*, with the bankruptcy court's Discovery Order and several orders issued from the bench. Sanctions Order at 1 (emphasis added). Section 727(a)(6) provides for the denial of discharge when "the debtor has *refused*, in the case— (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify[.]" 11 U.S.C. § 727(a)(6)(A) (emphasis added). The denial of discharge under Section 727(a)(6)(A) is discretionary with the bankruptcy court. See In re Kokoszka, 479 F.2d 990, 997 (2d Cir. 1973), aff'd on other grounds

---

[5] In addition, "[f]or purposes of Section 727(a)(4)(B), a claim is defined by Section 101(5) to mean a 'right to payment' or a 'right to an equitable remedy for breach of performance if such breach gives rise to a right of payment.'" In re Henderson, 423 B.R. 598, 619 (Bankr. N.D.N.Y. 2010) (quoting 11 U.S.C. § 101(5)(A) and (B)); see also In re Isaacson, 478 B.R. 763, 792 (Bankr. E.D. Va. 2012); In re Howard, 361 B.R. 20, 25 (Bankr. D. N.H. 2007). "Claim as so defined [in Section 101(5)(A) and (B)] does not mean 'representation' [,] 'statement' * * *[,]" In re Gorchev, 275 B.R. 154, 164 (Bankr. D. Mass. 2002); see also In re Howard, 361 B.R. at 25, or "assertion." In re Garcia, 168 B.R. 403, 407 (D. Ariz. 1994). Thus, the Sanctions Order contains no finding that the debtors ever presented or used a false claim in or in connection with the bankruptcy case within the meaning of Section 727(a)(4)(B).

15

sub nom Kokoszka v. Belford, 417 U.S. 642, 94 S. Ct. 2431, 41 L. Ed. 2d 374 (1974) (holding that Section 14(c)(6) of the now repealed Bankruptcy Act, 11 U.S.C. § 32(c)(6)[6], the predecessor to Section 727(a)(6), "does not state that a discharge *must* be denied for failing to obey an order * * *" and that "the referee must exercise his discretion whether or not to grant a discharge, even when an order has not been followed" because "[t]he denial of a discharge can work a serious deprivation upon a debtor, * * * there are many circumstances where a bankrupt's disobedience may have been inadvertent or otherwise excusable[] * * * [and] the denial of a discharge is not the only weapon available to the referee in order to enforce his orders * * *."); see also In re Demar, 373 B.R. 232, 240 (Bankr. E.D.N.Y. 2007) (""The denial of the discharge under [Section 727(a)(6)(A)] is subject to the discretion of the Court."); In re Beeber, 239 B.R. 13, 31 (Bankr. E.D.N.Y. 1999) (holding that the denial of discharge for failure to obey a lawful court order "is subject to the discretion of the court."); In re Katz, 146 B.R. 617, 621-22 (Bankr. E.D.N.Y. 1992) ("A court in a bankruptcy proceeding must exercise its discretion when determining whether or not to grant a discharge to a debtor, even when an order of the court has not been followed.") "[B]efore denying a discharge, the [bankruptcy court] should weigh the detriment to the proceedings and the dignity of the court against the potential harm to the debtor if the discharge is denied[,]" In re Kokoszka, 479 F.2d at 997-98, and consider the following factors: "the intent behind the bankrupt's acts- were they wilful or was there a justifiable excuse; was there injury to

---

[6] Section 14(c)(6) of the Bankruptcy Act, 11 U.S.C. § 32(c), provided:

> "The court shall grant the discharge unless satisfied that the bankrupt has . . . (6) in the course of a proceeding under this title refused to obey any lawful order of, or to answer any material question approved by, the court; . . ."

In re Kokoszka, 479 F.2d at 997.

16

the creditors; and is there some way that the bankrupt could make amends for his conduct." In re Kokoszka, 479 F.2d at 998; see also In re Katz, 146 B.R. at 622 (accord).

"It should be noted that the word 'refused' is used in Section 727(a)(6)(A), which is different from the word 'failed' which is used elsewhere in Section 727(a)." In re Demar, 373 B.R. at 240.[7] "As a consequence, the mere failure of a debtor to obey a court's order, without more, is insufficient to deny * * * a debtor's bankruptcy discharge." In re Demar, 373 B.R. at 240 (quotations and citation omitted). "Denial of discharge under [Section 727(a)(6)(A)] 'requires that the debtor willfully and intentionally refused to obey a court order.'" In re Leone, 463 B.R. 229, 247 (Bankr. N.D.N.Y. 2011) (quoting In re Gardner, 384 B.R. 654, 669-70 (Bankr. S.D.N.Y. 2008)). "[A] mere failure to obey the order, resulting from inadvertence, mistake, or inability to comply, is insufficient; the party seeking [denial of discharge] must demonstrate some degree of volition or willfulness on the part of the debtor." In re Gardner, 384 B.R. at 670. Moreover, the bankruptcy court "may, in its discretion, grant a discharge to a debtor who immediately complies with an order which he had previously disobeyed due to an excusable circumstance." In re Katz, 146 B.R. at 622.

In the Sanctions Order, the bankruptcy court found that the debtors "failed to," not refused to, comply with several of its orders and made no findings with respect to the debtors' willfulness or intent in their noncompliance of its orders, which is a question of fact. Thus, any

---

[7] "Fail," as used by the bankruptcy court, means "to leave undone" or "to not do (something that you should do or are expected to do)." "Fail." Merriam-Webster, n.d. Web. 16 Jan. 2014. http://www.merriam-webster.com/dictionary/fail>. "Refuse," as used in the statute, means "to say or show that you are not willing to do something that someone wants you to do" or "to show or express unwillingness to do or comply with." "Refuse." Merriam-Webster, n.d. Web. 16 Jan. 2014. http://www.merriam-webster.com/dictionary/refuse>. Thus, while a showing of a refusal to do something requires a finding of intent or willfulness, a showing of a failure to do something does not.

17

appeal from the Summary Judgment Order would require an assiduous review of the record to determine the facts left unresolved by the Sanctions Order, which is not appropriate on an interlocutory appeal.

### 3. Finding that the Debtors Withheld Recorded Information

In the Sanctions Order, the bankruptcy court also found that the debtors "withheld books, documents, records and papers relating to debtor's financial affairs." (Sanctions Order at 1). Although Cadles contends that this finding constitutes the law of the case upon which judgment should have been granted denying a discharge to debtors as a matter of law, it does not identify the specific provision of Section 727 upon which it relies in support of that contention. The only provision of Section 727 that deals with the withholding of such recorded information is Section 727(a)(4)(D), which provides for a denial of discharge when "the debtor knowingly and fraudulently, in or in connection with the case * * * withheld *from an officer of the estate entitled to possession under this title*, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs[.]" (emphasis added).

"[A] party objecting to discharge under [Section 727(a)(4)(D)] has the initial burden of proving * * *: 1) the withholding of documents was done by the debtor or someone for whose conduct the debtor is legally responsible; 2) was in connection with a case; 3) was withheld from an officer of the estate entitled to possession; 4) was done knowingly and fraudulently; and 5) relates to the debtor's property or financial affairs." In re Sohmer, 434 B.R. 234, 250 (Bankr. D. Mass. 2010) (quotations and citations omitted); see also In re Gardner, 384 B.R. at 668. The question of the debtors' knowledge and intent in withholding the recorded information relating to

their financial affairs is a question of fact, see In re Adler, 395 B.R. at 833, left unresolved by the Sanctions Order.

Moreover, under Section 727(a)(4)(D), "[t]he recorded information must be withheld from an officer of the estate, typically the trustee, entitled to possession of it pursuant to the Bankruptcy Code." In re Matus, 303 B.R. 660, 679 (Bankr. N.D. Ga. 2004). Cadles, as a creditor, is not an "officer of the estate," see, e.g. In re Potts, 501 B.R. 711, 723 (Bankr. D. Colo. 2013); In re Yocum, 488 B.R. 748, 754 (Bankr. N.D. Ala. 2013), and the Sanctions Order contains no finding that the Trustee, or other officer of the estate, ever requested recorded information that was withheld by the debtors, intentionally or otherwise.

Since, for all of the reasons set forth above, Cadles has not advanced any controlling question of law for which substantial ground for difference of opinion exists or demonstrated that the appeal implicates "exceptional circumstances," its motion seeking leave to appeal to this Court from the Summary Judgment Order is denied.

III. Conclusion

For the reasons set forth above, Cadles' motion seeking leave to appeal to this Court from the November 15, 2013 order of the bankruptcy court is denied.

**SO ORDERED.**

s/ Sandra J. Feuerstein
_____
Sandra J. Feuerstein
United States District Judge

Dated: January 21, 2014
　　　Central Islip, New York